UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WELLS FARGO BANK, N.A., as trustee for the benefit of the REGISTERED HOLDERS OF JPMBB COMMERCIAL MORTGAGE SECURITIES TRUST 2015-C31, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2015-C31, <br><br> Plaintiff, <br><br> -against- <br><br> MICHAEL SILBERBERG, <br><br> Defendant. | 23-CV-2811 (JGLC) <br><br> **OPINION AND ORDER** |

JESSICA G. L. CLARKE, United States District Judge:

Before the Court is Defendant Michael Silberberg's ("Guarantor") motion for a stay of this matter pending the outcome of a foreclosure proceeding in the Circuit Court of Cook County, Illinois. ECF No. 29. For the reasons set forth below, the motion is GRANTED.

## BACKGROUND

The following facts are, unless otherwise noted, taken from the Complaint, ECF No. 1 ("Compl."). Plaintiff Wells Fargo Bank, N.A. ("Lender") filed the instant action on April 4, 2023 seeking to enforce Defendant's personal guaranty (the "Guaranty") on a $164 million commercial real estate loan (the "Loan") advanced to SL Civic Wacker LLC ("Borrower") and secured by real property located in downtown Chicago, Illinois. *Id.* ¶¶ 1, 28–29. As part of the loan, Borrower and Plaintiff's predecessor-in-interest entered into a loan agreement ("Loan Agreement") dated July 8, 2015 and, that same day, Defendant executed the guaranty agreement ("Guaranty Agreement") as security for the loan. *Id.* ¶¶ 28, 30.

The Loan Agreement describes a set of circumstances that can trigger full recourse liability – meaning that the Borrower and Guarantor are liable for the full amount of a debt instead of the value of the property securing the Loan. *Id.* ¶ 2; *see also* ECF 1-1 ("Loan Agreement") § 9.3. Pursuant to Section 9.3 of the Loan Agreement, Lender may "seek full money damages and a deficiency judgment against Borrower, and therefore against Guarantor," if certain events occur. *Id.* ¶ 42. As relevant here, one such event involves Borrower's failure to "to maintain its status as a Special Purpose Entity." Loan Agreement § 9.3(g)(viii). Another full recourse triggering event occurs if "Borrower fails to obtain Lender's prior written consent to any Indebtedness not otherwise permitted hereunder or under any other Loan Document or voluntary Lien encumbering the Property which does not constitute a Permitted Encumbrance." *Id.* § 9.3(g)(iv).

Under the Guaranty Agreement, Defendant guaranteed "all obligations and liabilities of Borrower pursuant to Section 9.3 of the Loan Agreement." ECF 1-3 ("Guaranty Agreement") §§ 1.1–1.2. Thus, per the Guaranty, if Borrower triggers any full recourse events, Guarantor is personally liable for the full amount of the debt. *See* Compl. ¶ 2.

On August 21, 2021, Plaintiff commenced a foreclosure action (the "Foreclosure Action") against Borrower in the Circuit Court of Cook County, Illinois. Compl. ¶¶ 77, 79. Defendant is not a party to the action, which remains ongoing. *Id.* ¶¶ 78–79. The Second Amended Complaint in that action states that Borrower defaulted under the Loan Agreement, owes Plaintiff $194,736,841.09, and is "personally liable for any deficiency." ECF No. 30-3 ("SAC") at ¶¶ 25(i), (l). In the Foreclosure Action, Plaintiff seeks, *inter alia*, a "judgement in favor of Plaintiff and against Borrower for any deficiency if the sale of the Property fails" to fully compensate Plaintiff. *Id.* at 14.

2

After filing the Foreclosure Action, Plaintiff hired a financial investigator "to investigate Borrower's financial operations" and alleges that it uncovered two full recourse triggering events. Compl. ¶¶ 80–89. The first is that Borrower assumed unauthorized indebtedness in violation of Section 9.3(g)(iv) of the Loan Agreement. *Id.* ¶¶ 82–87. The second is that Borrower, by assuming unauthorized debt, failed to maintain its status as a Special Purpose Entity pursuant to Section 9.3(g)(viii) of the Loan Agreement. *Id.* ¶ 82–89.

On April 4, 2023, Plaintiff filed the instant action against Defendant seeking to enforce the obligations of the Guaranty. *Id.* ¶¶ 1–2. Plaintiff argues that because Borrower triggered events under Section 9.3 of the Loan Agreement that turned the Loan full recourse, Defendant is personally liable for Borrower's debt per Section 1.2 of the Guaranty (provision guaranteeing Borrower's liabilities under Section 9.3 of the Loan Agreement). *Id.* ¶¶ 41, 50, 89, 91, 101. Accordingly, the Complaint demands recovery from Defendant of $205,090,246.92 – $203,010,974.89 of which constitutes Borrower's indebtedness under the Loan as of March 6, 2023, and $2,079,272.03 of which represents certain liens Borrower assumed but never discharged. *Id.* ¶¶ 91, 94.

On September 1, 2023, Defendant filed the present motion to stay pursuant to the Supreme Court's *Colorado River* abstention doctrine or, in the alternative, pursuant to the Court's discretion. ECF No. 29.

## LEGAL STANDARD

In *Colorado River*, the Supreme Court held that under certain "exceptional circumstances, . . . a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in comprehensive disposition of litigation and abstention would conserve judicial resources." *Niagara Mohawk Power Corp. v. Hudson River-Black River*

*Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18 (1976)) (internal quotation marks omitted). "A motion to abstain is considered as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure." *Phillips v. Citibank, N.A.*, 252 F. Supp. 3d 289, 295 (S.D.N.Y. 2017) (quoting *Stahl York Ave. Co., LLC v. City of New York*, No. 14-CV-7665 (ER), 2015 WL 2445071, at *7 (S.D.N.Y. May 21, 2015)) (internal quotation marks omitted).

As such, "the court 'must accept as true all material factual allegations in the complaint, but is not to draw inferences from the complaint favorable to plaintiffs.'" *Cruz v. N.Y.C. Dep't of Educ.*, No. 19-CV-856 (PGG), 2020 WL 1322511, at *6 (S.D.N.Y. Mar. 20, 2020) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)). Further, a court "may consider evidence outside the pleadings." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247, 130 S. Ct. 2869 (2010).

## DISCUSSION

Because the Court finds that a stay is warranted under *Colorado River*, the Court does not analyze whether a discretionary stay is warranted.

The first step in the *Colorado River* analysis is to determine whether "the state and federal proceedings are parallel." *Smulley v. Mutual of Omaha Bank*, 634 Fed. App'x. 335, 336 (2d Cir. 2016) (internal quotation marks omitted). Next, the Court must "consider six factors, with the balance heavily weighted in favor of the exercise of jurisdiction." *Niagara Mohawk Power Corp.*, 673 F.3d 84 at 100 (internal quotation marks omitted). The factors are:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and

whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Id.* at 100–01 (citation omitted). "No one factor is necessarily determinative;" instead, the Court must "carefully consider[] [each factor] . . . taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise." *Colorado River*, 424 U.S. at 818 (citation omitted). "Where a Colorado River factor is facially neutral, that is a basis for retaining jurisdiction, not for yielding it." *Niagara Mohawk Power Corp.*, 673 F.3d 84 at 101 (citation and internal quotation marks omitted).

## I.    The Actions Are Parallel

"Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Id.* at 100. "Perfect symmetry of parties and issues is not required. Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Abe v. New York Univ.*, No. 14 Civ. 9323 (RJS), 2016 WL 1275661, at *6 (S.D.N.Y. Mar. 30, 2016). "[E]ven if different relief is sought in the two actions, or the claims are not exactly the same, they are parallel as long as the causes of action are comprised of the same essential issues." *Tuebor Reit Sub LLC v. Paul*, No. 19-CV-8540 (JPO), 2020 WL 4897137, at *5 (S.D.N.Y. Aug. 19, 2020) (quoting *Garcia v. Tamir*, No. 99-CV-298 (LAP), 1999 WL 587902, at *3 (S.D.N.Y. Aug. 4, 1999)).

This action and the Illinois state court action are parallel. That Defendant is not named in the state court action is of no moment – as discussed above, perfect symmetry of parties is not required. *See also Tuebor Reit*, 2020 WL 4897137, at *5; *Stahl York Ave.*, 2015 WL 2445071, at *9; *Phillips*, 252 F. Supp. at 295. Although the forms of relief sought by Plaintiff in this case and

the state action are not identical, the recovery in both actions stems from Borrower's alleged breaches of the Loan Agreement. "The fact that [Plaintiff] seeks recovery via a judicial foreclosure in [Illinois] state court and recovery via a monetary judgment here makes no difference, in light of the fact that the breaches pleaded by" Plaintiff here arise from the same conduct as the breaches pleaded in Illinois state court. *Tuebor Reit*, 2020 WL 4897137, at *5; *see also U.S. Bank Nat'l Ass'n as trustee Bank of Am., N.A. v. E. Fordham DE LLC*, 804 F. App'x 106, 107 (2d Cir. 2020) ("At the outset, the district court correctly determined that the two proceedings were parallel, given that both actions are centered on the same parties' Loan Modification Agreement and whether either party breached its obligations under that agreement.").

Plaintiff must litigate many of the same issues here and in state court. For instance, in order to prove that Defendant is personally liable under the Guaranty, Plaintiff must first establish (1) that Borrower defaulted on the Loan, and (2) that pursuant to Section 9.3 of the Loan Agreement, Borrower's actions triggered full recourse liability. Likewise, Plaintiff must prove those same elements to hold Borrower personally liable in the state court action.

Defendant argues that the proceedings are not parallel in part because "there is no possibility that the Foreclosure action will 'moot' this action" as it believes that the foreclosure sale price of the building will be "far below the amount of [the] debt." ECF No. 32 ("Opp.") at 17. This argument is unavailing. In the state court action, Plaintiff seeks a judgment against Borrower for "any deficiency if the sale of the Property fails to produce a sufficient amount to pay the amount found due." SAC at 14. Thus, regardless of the building's sale price, if the state court orders Borrower to cover any deficiency, Plaintiff will be able to seek full compensation

for its debt, potentially mooting this action against the Guarantor. Accordingly, the Court concludes that the two actions are parallel.

## II.       The *Colorado River* Factors Weigh in Favor of a Stay

Since the Court has determined that the state and federal actions are parallel, it now weighs the six *Colorado River* factors, concluding that a stay of this action is appropriate pending a determination in the Illinois state court action. In doing so, the Court relies heavily on the well-reasoned decision by Judge Oetken in *Tuebor*, an analogous case. Counsel for Plaintiff asks the Court to disregard this decision, in part on the alleged basis that Judge Oetken later indicated the abstention decision was wrongly decided. The record in that case does not support this conclusion. *See ATX Debt Fund 1, LLC v. Paul*, No. 19-CV-8540 (JPO), 2022 WL 20053878, at *1 (S.D.N.Y. Feb. 14, 2022).

### A.  Jurisdiction Over a Res

The first *Colorado River* factor weighs in favor of abstention. The Illinois state court has jurisdiction over the property located in Illinois. Though this action does not involve a res, "the claims and defenses herein are inextricably linked to [the res], as a result of the property being used to secure the loan that [Defendant], as guarantor, [is alleged to have] subsequently breached." *Tuebor Reit*, 2020 WL 4897137, at *5 (cleaned up); *see also Sitgraves v. Fed. Home Loan Mortg. Corp.*, 265 F. Supp. 3d 411, 414 (S.D.N.Y. 2017).

### B.  Inconvenience to the Parties

The second factor requires the Court to analyze the inconvenience of the federal forum. Because "a substantial part of the events or omissions giving rise to the claims occurred in this district," and the Guaranty's forum selection designates New York courts "as the proper forum" for litigation, the Court finds that this factor counsels against abstention. Opp. at 20–21.

### C.  Avoidance of Piecemeal Litigation

"The danger of piecemeal litigation is the paramount consideration in the [*Colorado River*] analysis, due in part to the possibility of inconsistent disposition of the claims." *Phillips*, 252 F. Supp. at 299 (quoting *Arkwright–Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir. 1985)) (cleaned up). "If maintaining virtually identical suits in two forums under these circumstances would waste judicial resources and invite duplicative effort, the avoidance of piecemeal litigation is best served by leaving these suits in the state court." *Sitgraves*, 265 F. Supp. 3d at 414 (quoting *Arkwright–Boston*, 762 F.2d at 211) (cleaned up).

As discussed above, Plaintiff must prove substantially similar claims in this action and in the state court action. This is evidenced in part by Plaintiff's "duplicative discovery" requests. ECF No. 33 ("Reply") at 8. Certain of Plaintiff's discovery requests in this action are identical to those in the Foreclosure Action and seek information related to Borrower's alleged violations of Section 9.3 of the Loan Agreement. *See, e.g.*, ECF No. 33-2 at 7 ¶ 3; ECF No. 30-5 at 9 ¶ 6. Additionally, Plaintiff may recover the full value of its debt in the state court action. Thus, "moving the current action forward risks a waste of judicial resources without first waiting to see if [Plaintiff] even needs to continue this suit to recover." *Tuebor Reit*, 2020 WL 4897137, at *6 (cleaned up). This factor weighs in favor of abstention.

### D.  The Order in Which Jurisdiction Was Obtained

The fourth factor, the order in which jurisdiction was obtained, weighs in favor of abstention. "[T]his prong of the *Colorado River* test turns not just 'on the sequence in which the cases were filed, but rather in terms of how much progress has been made in the two actions.'" *Niagara Mohawk Power Corp.*, 673 F.3d 84 at 102 (quoting *Vill. of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir.1999)).

Here, not only was the state court action filed two years earlier than this action, but, according to Plaintiff, the parties in the state action stipulated to completing fact discovery by November 2023 and expert discovery by early January 2024. *See* Opp. at 23–24. On the other hand, the parties in the federal action have asked the Court for an extension until April 2024 to complete fact discovery and an extension until May 2024 to complete expert discovery. *See* ECF No. 40-1 at 2–3. Thus, discovery in the state court action is at a more advanced stage than it is in this action.

### E.  Law Supplying the Rule of Decision

The fifth *Colorado River* facts requires the Court to examine whether state or federal law supplies the rule of decision in this case. *Niagara Mohawk Power Corp.*, 673 F.3d at 102. While "the absence of federal issues does not strongly advise dismissal, it does favor abstention where the bulk of the litigation would necessarily revolve around the state-law rights of numerous parties." *Phillips*, 252 F. Supp. 3d at 301 (cleaned up). In both cases, Plaintiff's claims are governed by state law. Nonetheless, Plaintiff argues that this Court "will be much better suited to decide New York legal issues than an Illinois state court." Opp at 24. The focus of this factor is not which court is better suited to decide a legal issue, but rather "whether federal or state law governs." *Tuebor Reit*, 2020 WL 4897137, at *6. Because both actions revolve around state law issues, this factor counsels towards abstention. *See also U.S. Bank Nat'l Ass'n as trustee Bank of Am., N.A.*, 804 F. App'x at 108 ("The fifth factor, whether state or federal law supplies the rule of decision, supports abstention because neither [party] asserts a federal claim.").

### F.  Adequate Protection of Plaintiff's Rights

The final factor involves an analysis of "whether the 'parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.'"

*Stahl York Ave.*, 2015 WL 2445071, at \*12 (quoting *Vill. of Westfield*, 170 F.3d at 124). There is nothing in the record here to suggest that the Illinois state court will not adequately protect Plaintiff's rights or not "provide a fair forum that will promptly resolve the parties' claims." *Id.* "Nevertheless, the ability of the state court to adequately protect Plaintiff's interests only makes this factor neutral" and thus weighs against abstention. *Dalzell Mgmt. Co. v. Bardonia Plaza, LLC*, 923 F. Supp. 2d 590, 602 (S.D.N.Y. 2013).

### G.  *Colorado River Abstention is Proper*

On balance, as four factors favor abstention, including the piecemeal litigation factor considered to be the "paramount consideration" in the *Colorado River* analysis, the Court finds that abstention is warranted.

### III.    The Guaranty Does Not Undermine the Court's Ability to Abstain

Plaintiff argues that the terms of the Guaranty should prevent the Court from entering a stay in this case. Opp. at 8–12. Citing to Section 1.6 of the Guaranty, Plaintiff claims that "Defendant expressly waived the right to seek, as the present motion does, a stay of enforcement of the Guaranty until Plaintiff exhausts its foreclosure remedy." *Id.* at 9. Plaintiff contends that applying a *Colorado River* abstention would represent a "cavalier disregard of the contracts' express written terms." *Id.* at 10. In support of its argument, Plaintiff cites two cases in which courts refused to enter a stay on a guaranty claim under *Colorado River* pending a foreclosure action. Neither case is persuasive.

Plaintiff primarily relies on *Bank of New York v. Bin Saud*, 628 F. Supp. 474 (S.D.N.Y. 1986), where the court denied a *Colorado River* stay in a guaranty case in part because the court found that the parties' guaranty "expressly provides that the obligations contained therein are independent of the . . . property" being foreclosed in state court. *Bank of New York*, 628 F. Supp.

at 476. According to Plaintiff, this case stands for the proposition that "Courts regularly (and correctly) enforce parties' agreements to allow enforcement of a guaranty in parallel with other remedies against a borrower." Opp. at 11.

Plaintiff's reading of *Bank of New York v. Bin Saud* is misguided. The court in *Bin Saud* did not decline a stay under *Colorado River* due to the parties' contractual agreement, but rather took the parties' guaranty into consideration in its analysis of the third *Colorado River* factor. *Bank of New York*, 628 F. Supp. at 476 ("[T]he two actions relevant to this motion do not have those characteristics of 'piecemeal' litigation which have required the stay of federal jurisdiction" as the contractual obligations in the guaranty rendered the guaranty and foreclosure actions "largely disparate" and thus not in danger of piecemeal litigation). Because it found that the guaranty agreement created a distinct contractual relationship, the court was not concerned that adjudication of the guaranty action would result in piecemeal litigation. *Id.* Ultimately, the court found that a stay was not warranted in the federal action based on the weight of the *Colorado River* factors, not because the guaranty prevented the court from entering a stay.

The second case upon with Plaintiff relies, *Valley Nat'l Bank v. Spitzer*, 31 Misc. 3d 1232(A) (Sup. Ct. 2011) is a New York Supreme Court case and, as such, the decision does not address whether parties can contract away the application of federal abstention doctrines. Furthermore, the court in that case also rejected a stay based on entirely distinguishable facts, including that the foreclosure proceedings in that case were suspended and the court had "already determined that defendant is liable to plaintiff under the terms of the Guaranty Agreement." *Id.* at *5. Neither of these circumstances are present here.

Finally, in *Tuebor*, this Court, faced with a guaranty containing a similar provision to Section 1.6 here, determined that *Colorado River* abstention was appropriate in a federal

guaranty case pending a state court foreclosure action. *Tuebor Reit*, 2020 WL 4897137, at *7. Though Judge Oetken's opinion did not analyze the provision, the lender cited and discussed the provision in its papers opposing the guarantor's stay request, and Judge Oetken nonetheless granted the stay. ECF No. 31-1 at 12. The Court concludes that the Guaranty does not bar the Court's decision to abstain.

## CONCLUSION

For the foregoing reasons, Defendant's motion to stay is GRANTED pending a resolution of the foreclosure action in the Circuit Court of Cook County, Illinois. The Clerk of Court is directed to terminate the motions at ECF Nos. 29, 36, 37, 38, and 40.

Dated: January 3, 2024
      New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge